In re Dennis L. KLECKNER, Debtor.

Joseph D. OLSEN, Trustee, Plaintiff,

v.

Roger T. RUSSELL, Defendant.

Bankruptcy No. 84 A 2132.

United States Bankruptcy Court,
N.D. Illinois, W.D.

Aug. 6, 1986.

Joseph Olsen, Rockford, Ill., for plaintiff.

Roger T. Russell, Belvidere, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This case comes before the Court on the Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment. The Plaintiff, Attorney Joseph D. Olsen, Trustee, is representing himself, as is Defendant, Attorney Roger T. Russell.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Civil Procedure.

The facts as stipulated to by the parties are as follows: Attorney Russell represented the Debtor in a state court action to recover personal injuries suffered by Debtor in an accident. On June 12, 1984, the insurance company of Alfred F. Dyson, de-

fendant in the state court action, sent a settlement check and release form to Attorney Russell. On June 16, 1984, the Debtor signed the release form. On June 29, 1984, after being signed by the Illinois Department of Public Aid, Attorney Russell deposited the check in his Trust Account. Attorney Russell then paid to himself $12,627.20 pursuant to the contingent fee contract between himself and the Debtor. The Debtor filed for relief under Chapter 7 of the Code on August 16, 1984. The Trustee brought the present Adversary Proceeding to recover $12,627.20 from Attorney Russell as a preference pursuant to Section 547(b) of the Code. Attorney Russell then filed his Motion for Summary Judgment claiming as the only issue whether he had a perfected attorney's lien, or in the alternative an equitable lien, a charging lien or a retaining or possessory lien against the proceeds of the settlement check.

Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of filing of the petition;

    \*    \*    \*    \*    \*    \*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. Section 547(b). The parties have stipulated that only Section 547(b)(5) is at issue.[1]

The Defendant maintains that he has a valid attorney's lien in, or in the alternative, an equitable assignment of, the proceeds of the settlement check; therefore, as a secured creditor, he would receive the same whether the Debtor filed a Chapter 7 case or not. The Trustee argues that the Defendant is not a secured creditor, therefore received more because of the transfer than he would in the Chapter 7.

■■■■ In order to establish a valid attorney's lien, an attorney must strictly comply with all provisions of Ill.Rev.Stat. Ch. 13, Section 14. *Unger v. Checker Taxi Co.*, 30 Ill.App.2d 238, 174 N.E.2d 219 (1st Dist. 1961). Section 14 of Ill.Rev.Stat. Ch. 13, provides that in order to perfect the lien, the attorney shall serve notice of the lien upon the opposing party by way of registered or certified mail. In this case, the Defendant admits that no letter claiming a lien on the proceeds of the suit was sent by way of registered or certified mail to the defendants of the state court action. Therefore, the Defendant has no statutory lien in the proceeds of the settlement check. *Kallen v. Litas*, 47 B.R. 977 (D.C. N.D.Ill.1985); *Unger v. Checker Taxi Co.*[2]

---

**1.** For the purposes of the Motion for Summary Judgment, the parties stipulated to a set of facts. However, in his Response to Plaintiff's Motion for Summary Judgment and Brief in Support, the Defendant, for the first time, raises the issue of Debtor's insolvency, and requests to be heard on the issue. Although the Court should hold Attorney Russell to his stipulations, this case will be set for trial on the issue of Debtor's insolvency at the time of the transfers.

**2.** The Defendant maintains that language in *Kallen,* 47 B.R. at 985, gives him priority over

any distribution of the funds, citing *Fischer v. Slayton & Co., Inc.,* 25 Ill.App.2d 250, 166 N.E.2d 617 (1st Dist.1960). The Defendant also cites *Fischer* for the proposition that the Trustee has no standing to raise the issue of notice to opposing parties. *Fischer* holds that the attorney's client may not raise the issue of notice. A cursory reading of *Kallen* reveals that not only does the trustee have standing, but if successful, renders ineffective a lien as a statutory lien excepted under 547(c)(6).

■ In many cases, the invalidation of a statutory attorney's lien gives rise to an equitable lien. Such equitable liens are recognized, under certain circumstances, in the Seventh Circuit. *McKee-Berger-Mansueto, Inc. v. Board of Education*, 691 F.2d 828 (7th Cir.1982); *In re Key West Restaurant & Lounge, Inc.*, 54 B.R. 978 (Bankr.N.D.Ill.1985). In this case, the contingent fee contract creates an equitable lien in the proceeds.

■ The elements of an equitable lien are (1) a debt, duty or obligation owing by a person to another and (2) a res to which that obligation fastens, which can be identified or described with reasonable certainty. *Avco Delta Corp. Canada Ltd. v. U.S.*, 484 F.2d 692 (7th Cir.1973); Cert. denied *Canadian Parkhill Pipe Stringing Ltd. v. U.S.*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974); *Nelson v. Fogelstrom*, 5 Ill.App.3d 804, 284 N.E.2d 339 (3rd Dist.1972); *Calacurcio v. Levson*, 68 Ill.App.2d 260, 215 N.E.2d 839 (2nd Dist.1966).

■ To create an equitable lien, there must be an actual assignment of a portion of a fund. *McKee-Berger-Mansueto, Inc. v. Board of Education*. Whether there is an actual assignment of a portion of the fund will turn on the precise language of the contingent fee contract. *Kallen v. Litas.*

In this case, the contingent fee contract provided:

"I agree to pay said attorneys' fees as follows: 50% of *whatever may be recovered* from said claim whether by suit, settlement, or in any other manner ..."

In *In re Key West Restaurant*, the court found that a contract which provided that the plaintiffs agreed to pay an amount equal to fifteen percent of any recovery merely constituted a personal promise to pay and not an equitable assignment. *Accord*, see *Dept. of Public Works v. Exchange Nat. Bank*, 93 Ill.App.3d 390, 49 Ill.Dec. 218, 417 N.E.2d 1045 (2nd Dist. 1981). In *Kallen v. Litas*, the court found

that a retainer agreement which provided that the debtor was to pay the attorney "the sum of ... plus 40% ... of any recovery ..." did not constitute an equitable assignment. The court reasoned that the agreement did not impose the fee directly on the settlement fund. Rather, the agreement merely set the amount to be paid. The court held that there could be no equitable assignment if the attorneys *could* have, but were not required to look only to the settlement fund for compensation.

In *Marukas v. Marukas*, 99 Ill.App.2d 342, 240 N.E.2d 797 (1st Dist.1968), the court granted an attorney an equitable lien. The contingent fee agreement provided that the plaintiff does "hereby assign to" the attorney one-third of any sum collected. In *McKee-Berger-Mansueto Inc.*, the court found that a contingent fee contract which provided that the attorneys were entitled "to one-third (⅓) of any and all recoveries" worked an equitable assignment.

Finally, the Seventh Circuit, in the recent case of *In re Brass Kettle Restaurant, Inc.*, 790 F.2d 574 (7th Cir.1986), found that a contingent fee agreement which provided that the attorneys would receive " ... Forty Percent (40%) of any recovery made in [Brass Kettle's] behalf ..." created an equitable assignment. The Court reasoned that the agreement entitled the attorneys to a portion of the recovery fund. Hence, a valid equitable lien was created in the proceeds of the settlement check. The language of the contingent fee contract here more closely resembles those which granted an equitable assignment. The language provides that Attorney Russell is to receive "50% of whatever may be recovered from said claim...." In other words, the agreement has assigned a portion of the fund to the Defendant by providing that payment will consist of 50% of the recovered funds.

■ Although there was a valid assignment of an interest in the settlement fund, the assignment is avoidable by the Trustee under Section 544(a) of the Code.[3]

---

**3.** The Court is also of the opinion that the assignment is an avoidable preference under Section 547(b) of the Code. Under Illinois law, an equitable lien does not attach until the res, to

Pursuant to Section 544(a), the trustee in bankruptcy takes the status of a hypothetical lien creditor. As such, the trustee can defeat a lien which is unperfected on the date of filing. *In re Einoder*, 55 B.R. 319, 326 (Bankr.N.D.Ill.1985). An equitable lien on the proceeds of a settlement fund is not perfected until judgment is entered on it. *Marbach v. Gnadl*, 73 Ill.App.2d 303, 219 N.E.2d 572 (1st Dist.1966). See also, *Williams v. West Chicago Street R.R.*, 199 Ill. 57, 64 N.E. 1024 (1902) (Attorney perfected actual assignment by filing assignment with the clerk of the court prior to service of garnishee summons by judgment creditor); and, *National Bank v. Newberg*, 7 Ill.App.3d 859, 289 N.E.2d 197 (1st.Dist.1972) (Attorney perfected equitable assignment by entering the settlement agreement, which contained the terms of the assignment, with the state court prior to service of a garnishment summons by a judgment creditor. The judgment creditor was given priority over that portion of the settlement fund, which the attorney claimed as reimbursement for other matters, that the court found was not covered by the perfected settlement agreement).

■ In the case at bar, Attorney Russell did nothing to perfect his equitable lien until after the filing of Debtor's petition. Because the equitable lien is avoidable under Section 544(a), Attorney Russell's claim is rendered an unsecured claim. See *Einoder*, supra. The $12,627.20 payment to Attorney Russell within 90 days of filing was,

therefore, the transfer of an interest of the Debtor in property for the benefit of the creditor, on account of an antecedent unsecured debt owed by the Debtor before the transfer was made. As such, Attorney Russell realized more because of the transfer than he would have in a Chapter 7 case. To that extent, at least, the elements of a preference exist.

Finally, the Defendant argues that he has a valid charging or retaining lien. The Court need not pass on the validity of these liens. If such liens were created, they were created, at the earliest, when the Defendant received the check from the insurance company. *Upgrade Corp. v. Michigan Carton Co.*, 87 Ill.App.3d 662, 43 Ill. Dec. 159, 410 N.E.2d 159 (1st Dist.1980). Since the debt arose on September 20, 1983, and the transfer (creation of the retaining or possessory lien) took place, at the earliest, on June 12, 1984, the transfer was made on account of an antecedent debt. *Kallen v. Litas*. Since the transfer occurred within 90 days of the filing of the petition, the creation of the liens is an avoidable preference.

On the basis of the following:

1. The Defendant's Motion for Summary Judgment should be denied.

2. The Plaintiff's Motion for Summary Judgment should be denied.

3. The case should be scheduled for trial on the issue of Debtor's insolvency. IT IS SO ORDERED.

which it attaches, comes into existence. *Borden v. Croak*, 131 Ill. 68, 22 N.E. 793 (1889); *Webster v. Nichols*, 104 Ill. 160 (1882); *Marbach v. Gnadle*. The first date at which the lien could have attached was June 12, 1984. Since the debt arose upon the signing of the Agreement, the transfer was made on account of an antecedent debt. *Kallen v. Litas*. The transfer was also made within 90 days of the Debtor's petition. Once the transfer of the equitable lien falls, the payment to Attorney Russell becomes one based upon an unsecured debt. As such, Attorney Russell received more by that transfer than he would have in the Debtor's Chapter 7 case.

This result is bolstered by Section 547(e)(3) which provides that "[f]or the purposes of this section, a transfer is not made until the debtor

has acquired rights in the property transferred." A settlement agreement does not give an attorney any rights in the litigation. *Cameron v. Boeger*, 200 Ill. 84, 65 N.E. 690 (1902); *Anastos v. O'Brien*, 3 Ill.App.3d 1015, 279 N.E.2d 759 (1st Dist.1972). The equitable lien, therefore, could not attach to the personal injury suit, and then to the proceeds once the case was settled. Rather, the lien attached to the res, the settlement proceeds, when Attorney Russell received the settlement check from the insurance company. The attachment of the lien is an avoidable transfer under Section 547(b). *Contra, In re Brass Kettle* (lien attached upon the signing of the contingent fee contract). However, because the lien is avoidable under Section 544, the Court need not disagree with the Seventh Circuit.